IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 21-1592-LPS |
| | ) | |
| TVISION INSIGHTS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT TVISION INSIGHTS, INC.'S OPENING BRIEF IN SUPPORT OF ITS
<u>MOTION TO DISMISS COMPLAINT</u>**


OF COUNSEL:
Ajay S. Krishnan
Julia L. Allen
Bailey W. Heaps
Reaghan E. Braun
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391 5400

Dated: January 7, 2022

John W. Shaw (No. 3362)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     NATURE AND STAGE OF PROCEEDINGS ................................................... 2

III.    SUMMARY OF ARGUMENT .......................................................................... 2

IV.     STATEMENT OF FACTS ................................................................................. 2

V.      ARGUMENT ...................................................................................................... 2

        A.    The claims of the '120 patent fail under § 101. .................................... 3

              1.    The '120 patent claims fail Alice Step 1 ..................................... 4

              2.    The '120 patent claims fail Alice Step 2 ..................................... 8

              3.    The Court need not separately analyze the patent's other claims. ............ 11

        B.    The claims of the '189 patent fail under § 101. .................................. 12

              1.    The '189 patent claims fail Alice Step 1 ................................... 13

              2.    The '189 patent claims fail Alice Step 2 ................................... 15

              3.    The Court need not separately analyze the patent's other claims. ............ 17

        C.    Nielsen's willfulness allegations should be dismissed. ....................... 17

VI.     CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Affinity Labs of Tex., LLC v. Amazon.com, Inc.*,
838 F.3d 1266 (Fed. Cir. 2016)............................................................................7, 9, 16

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ............................................................................. *passim*

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2016)............................................................................4

*APS Tech., Inc. v. Vertex Downhole, Inc.*,
C.A. No. 19-1166 (MN), 2020 WL 4346700 (D. Del. July 29, 2020) ...................................17

*Baggage Airline Guest Svcs., Inc. v. Roadie, Inc.*,
351 F. Supp. 3d 753 (D. Del. Jan. 7, 2019) ...................................................11

*In re Bd. of Trustees of Leland Stanford Junior Univ.*,
991 F.3d 1245 (Fed. Cir. 2021)............................................................................14

*Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*,
729 F. Supp. 2d 789 (N.D. Tex. 2010) ...................................................18

*Bos. Sci. Corp. v. Nevro Corp.*,
C.A. No. 16-1163-CFC, 2021 WL 4262668 (D. Del. Sept. 20, 2021) ...................................18

*Brightedge Techs., Inc. v. Searchmetrics, GmbH*,
304 F. Supp. 3d 859 (N.D. Cal. 2018) .............................................................5, 7, 8

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)............................................................................8, 11

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)............................................................................5, 6, 11

*Control v. Digital Playground, Inc.*,
No. 12-CV-6781 (RJS), 2016 WL 5793745 (S.D.N.Y. Sept. 30, 2016) .........................13, 14

*Courtesy Prod., L.L.C. v. Hamilton Beach Brands, Inc.*,
73 F. Supp. 3d 435 (D. Del. 2014)............................................................................18

*Cronos Techs., LLC v. Expedia, Inc.*,
C.A. No. 13-1538-LPS, 2015 WL 5234040 (D. Del. Sept. 8, 2015)......................................12

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
  758 F.3d 1344 (Fed. Cir. 2014) ........................................................................5

*Elec. Power Grp. LLC v. Alstom SA*,
  830 F.3d 1350 (Fed. Cir. 2016) ................................................................. *passim*

*F45 Training Pty Ltd. v. Body Fit Training USA Inc.*,
  C.A. No. 20-1194-LPS, 2021 WL 2779130 (D. Del. July 2, 2021) ..................5

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016) ........................................................................6

*In re Greenstein*,
  778 F. App'x 935 (Fed. Cir. 2019) ...................................................................9

*HSM Portfolio LLC v. Fujitsu Ltd.*,
  C.A. No. 11-770-RGA, 2012 WL 2580547 (D. Del. July 3, 2012) .................18

*Idexx Lab'ys, Inc. v. Charles River Lab'ys, Inc.*,
  C.A. No. 15-668-RGA, 2016 WL 3647971 (D. Del. July 7, 2016) .................11

*iLife Techs., Inc. v. Nintendo of Am., Inc.*,
  839 F. App'x 534 (Fed. Cir.), *cert. denied*, 142 S. Ct. 109 (2021) ................14

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ........................................................................7

*Intellectual Ventures I LLC v. Erie Indem. Co.*,
  850 F.3d 1315 (Fed. Cir. 2017), (4) ................................................................6

*Interval Licensing LLC v. AOL, Inc.*,
  896 F.3d 1335 (Fed. Cir. 2018) ................................................................5, 7, 9

*IPLearn–Focus, LLC v. Microsoft Corp.*,
  2015 WL 4192092 (N.D. Cal. July 10, 2015) ................................................13

*Kaavo Inc. v. Amazon.com Inc.*,
  323 F. Supp. 3d 630 (D. Del. 2018) ..................................................................7

*Kyowa Hakka Bio, Co. v. Ajinomoto Co.*,
  C.A. No. 17-313, 2018 WL 834583 (D. Del. Feb. 12, 2018) .........................18

*Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*,
  C.A. No. 15-438-LPS-CJB, 2015 WL 7833206 (D. Del. Dec. 3, 2015) .........18

*Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) .................................................................9, 10

*Neochloris, Inc. v. Emerson Process Mgmt. LLLP*,
   140 F. Supp. 3d 763 (N.D. Ill. 2015) ............................................................13, 14

*NNCrystal US Corp. v. Nanosys, Inc.*,
   C.A. No. 19-1307-RGA, 2020 WL 616307 (D. Del. Feb. 10, 2020) .......................18

*Parker v. Flook*,
   437 U.S. 584 (1978)..............................................................................................14

*Priceplay.com, Inc. v. AOL Advert., Inc.*,
   83 F. Supp. 3d 577 (D. Del. 2015), *aff'd*, 627 F. App'x 925 (Fed. Cir. 2016) ......10

*Realtime Data LLC v. Array Networks Inc.*,
   C.A. No. 17-800-CFC, 2021 WL 1752045 (D. Del. May 4, 2021), *adhered to
   sub nom. Realtime Data LLC, v. Array Networks Inc., et al.*, C.A. No. 17-800-
   CFC, 2021 WL 3726013 (D. Del. Aug. 23, 2021)...................................................4

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017)...............................................................................8

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018)............................................................................6, 7

*Spherix Inc. v. Cisco Systems, Inc.*,
   C.A. No. 14-393-SLR, 2015 WL 1517435 (D. Del. Mar. 31, 2015)......................17

*Telebrands Corp. v. GMC Ware, Inc.*,
   No. CV 15-03121-SJO(JCx), 2016 WL 6237914 (C.D. Cal. Apr. 5, 2016)...........18

*The Nielsen Co. (US), LLC v. HyphaMetrics, Inc.*,
   C.A. No. 21-01591-LPS (D. Del. filed Nov. 10, 2021) ...........................................2

*In re TLI Commc'ns LLC Pat. Litig.*,
   823 F.3d 607 (Fed. Cir. 2016)............................................................................8, 12

*TPP Tech LLC v. Zebra Techs. Corp.*,
   403 F. Supp. 3d 382 (D. Del. 2019)......................................................................14

*Trading Techs. Int'l, Inc. v. IBG LLC*,
   921 F.3d 1084 (Fed. Cir. 2019)...............................................................................7

*Transaction Sys., LLC v. Jack Henry & Associates, Inc.*,
   76 F.Supp.3d 513 (D. Del. 2014)..........................................................................14

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
   874 F.3d 1329 (Fed. Cir. 2017)...............................................................................9

*Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019)............................................................................15

*WhitServe LLC v. Donuts Inc.*,
    390 F. Supp. 3d 571 (D. Del. 2019), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020) ......................2

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
    100 F. Supp. 3d 405 (D.N.J. 2015), *aff'd*, 636 F. App'x 1014 (Fed. Cir. 2016) ....................14

*WiTricity Corp. v. Momentum Dynamics Corp.*,
    No. C.A. 20-1671-MSG, 2021 WL 4426959 (D. Del. Sept. 27, 2021) ....................................7

*Wolf v. Capstone Photography, Inc.*,
    No. 2:13-CV-09573, 2014 WL 7639820 (C.D. Cal. Oct. 28, 2014)........................................14

*Yu v. Apple Inc.*,
    1 F.4th 1040 (Fed. Cir. 2021) .........................................................................................14, 15

*ZapFraud, Inc. v. FireEye, Inc.*,
    C.A. No. 19-1688-CFC, 2021 WL 1138021 (D. Del. Mar. 25, 2021)....................................10

*Zyrcuits IP LLC v. Acuity Brands, Inc.*,
    C.A. No. 20-1306-CFC, 2021 WL 3287801 (D. Del. Aug. 2, 2021) .....................................11

**Statutes**

35 U.S.C. § 101 .................................................................................................... *passim*

## I.      INTRODUCTION

Defendant TVision Insights, Inc. moves to dismiss both patents asserted by Plaintiff the Nielsen Company (US), LLC as invalid under 35 U.S.C. § 101 for claiming abstract ideas.  The patents relate to using cameras or sensors in people's homes (with their permission) to observe them while they are watching TV, rather than relying on survey responses—that is, what Nielsen terms "panel measurement technologies" (Compl. ¶ 9).

*First*, U.S. Patent No. 9,302,120 ("the '120 patent") aims to gauge the efficacy of TV commercials by taking two data sets—data from a "media content presentation device" (*e.g.*, a TV) and data from some other device (*e.g.*, a computer)—and "determining an association" between them.  This purported invention of "determining an association" between two data sets is so broad and abstract on its face—and so clearly amenable to being performed by a human mind—that it presents a classic case of ineligible subject matter.

*Second*, U.S. Patent No. 9,020,189 ("the '189 patent") recites methods and devices for use in counting the number of people watching TV by using one camera to observe an object, a second camera to observe a different object (outside the threshold distance of the first camera), and then using those two inputs to count the number of people.  The way the claim is written, the resulting count can only be 0, 1, or 2.  This sort of simplistic logic is abstract, and the claim's minimal technical overlay—of using one camera in one area and a different camera in a different area—cannot save this claim from ineligibility.

If the § 101 challenge does not result in dismissal, Nielsen's claim for willful infringement should be dismissed because it has pleaded ***no*** facts indicating that TVision had knowledge of Nielsen's patents before this suit was filed—a prerequisite for willfulness.

TVision's motion should be granted.

1

## II.      NATURE AND STAGE OF PROCEEDINGS

Nielsen filed this action on November 10, 2021, alleging direct infringement of claims 1-2, 9, and 14-15 of the '120 patent and claim 9 of the '189 patent.  D.I. 1 ("Compl.") ¶¶ 58, 70.

## III.     SUMMARY OF ARGUMENT

The Complaint should be dismissed because neither patent-in-suit is directed to patent-eligible subject matter.  Moreover, Nielsen's willfulness allegations should be dismissed because it has not pleaded sufficient facts to render those allegations plausible.

## IV.     STATEMENT OF FACTS

Nielsen's business involves measuring TV consumption; it alleges that the patents-in-suit cover "panel measurement technologies," which "allow for a true understanding of not just who is consuming media, but when, why, where, and how much."  Compl. ¶¶ 7-9.

TVision was founded in 2014.  Compl., Ex. D.  As "Americans rapidly change their viewing habits" and "industry executives . . . criticize[] Nielsen's methods as outdated," Compl., Ex. G, TVision has become a "rising alternative[]."  Compl., Ex. F.  Though it too uses panels, TVision is "unlike Nielsen in that [it] is creating a very different metric," which focuses on "whether people are paying attention."  Compl., Ex. D.

This suit follows.  On the same day Nielsen sued TVision, it also sued HyphaMetrics, another "audience measurement company."  *See* D.I. 1, *The Nielsen Co. (US), LLC v. HyphaMetrics, Inc.*, C.A. No. 21-01591-LPS (D. Del. filed Nov. 10, 2021).

## V.      ARGUMENT

"It is well-settled that courts may determine patent eligibility under § 101 at the Rule 12(b)(6) stage."  *WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 575 (D. Del. 2019), *aff'd*, 809 F. App'x 929 (Fed. Cir. 2020).  The two-stage framework set forth by the Supreme Court in

*Alice* governs the Court's analysis. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014). Under that framework, a patent is directed at patent-ineligible subject matter where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon, or abstract idea, and (2) the particular elements of the claim, considered both individually and as an ordered combination, lack an inventive concept sufficient to transform the nature of the claim into a patent eligible application. *Id.*; *see also Elec. Power Grp. LLC v. Alstom SA*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). Nielsen's patents fail at both steps.

### A.      The claims of the '120 patent fail under § 101.

The '120 patent states that it is directed to "methods and apparatus to monitor advertisement exposure." '120 Patent at 1:16-17. Claim 1 states:

> 1.      A method for monitoring media content, the method comprising:
>
> determining via a meter that a media content segment was presented at a media content presentation device;
>
> logging via an activity monitor different than the meter an occurrence of an activity on a computing device different than the content presentation device, wherein the computing device is not in communication with the media content presentation device;
>
> determining an association between the occurrence of the activity on the computing device and the presentation of the media content segment at the media content presentation device.

'120 Patent at 15:33-45. The '120 patent's dependent claims recite additional details. Claim 2, for example, specifies that the activity undertaken on the computing device is "at least one of a accessing a webpage, a software application, or a media storage device." And claim 9 states that the media content presentation device on which a meter looks for a media content segment is "at least one of a television or a radio." Claim 14, meanwhile, is an independent claim that recites a system for undertaking the steps set forth in Claim 1. Claim 15 largely mirrors claim 2, but for the system described in claim 14.

### 1. The '120 patent claims fail *Alice* Step 1.

The question at step one is whether the claims focus on a "specific means or method that improves the relevant technology," which may pass muster under § 101, or on a "result or effect that itself is the abstract idea and merely invoke generic processes and machinery," which cannot. *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (cleaned up). Here, the asserted claims of the '120 patent fall squarely into the category of abstract ideas. They aim to gauge advertising efficacy by tracking what one does on a computer after viewing a TV commercial. *See* '120 Patent 2:17-20 ("[E]xposure to information about the advertisements is compared with information about the computer activity to locate and report relationships among exposure to the advertisements and the computer activity."); *see also* Compl. ¶ 29 ("The '120 Patent is directed to, among other things, correlating presentation of media content on a media content presentation device with activity on a different computing device."). Specifically, the claims are directed to the abstract idea of collecting data from one source (such as a TV) and from a second, independent source (such as a computer) and looking for "an association" between the first set of data and the second. *See* '120 Patent, claim 1; *see also id.* at 2:48-49 ("the example household . . . includes the computer [and] the television").

It is well established that "collecting information" is an abstract idea—even when the information is "limited to particular content," such as "synchronized phasor measurements" from a power grid.[1] That the '120 patent is directed to collecting information from two different

---

[1] *Elec. Power*, 830 F.3d at 1353–54 (collecting cases); *see also, e.g.*, *Realtime Data LLC v. Array Networks Inc.*, C.A. No. 17-800-CFC, 2021 WL 1752045, at *8 (D. Del. May 4, 2021), *adhered to sub nom. Realtime Data LLC, v. Array Networks Inc., et al.*, C.A. No. 17-800-CFC, 2021 WL 3726013 (D. Del. Aug. 23, 2021).

sources does not alter that conclusion.[2]  And the '120 patent's final step of "determining an association" is just another way of phrasing a routine process that courts have repeatedly ruled abstract.  *See, e.g.*, Compl. ¶ 29 ("The '120 Patent is directed to . . . ***correlating*** . . . ." (Emphasis added.)).  The Federal Circuit has, for example, treated "analyzing information" as abstract.[3]  So too similar concepts like "organizing information through . . . correlations"[4] and "recognizing certain data within [a] collected data set."[5]  In short, the claims of the '120 patent "are clearly focused on the combination of [the aforementioned] abstract-idea processes" and thus directed to an abstract idea.  *Elec. Power*, 830 F.3d at 1352–54 (finding abstract a representative patent claim that receiving multiple specific types of data from power grids, "analyzing events in real-time from the plurality of data streams," "displaying the event analysis results," and "deriving a composite indicator of reliability . . . from a combination of . . . real time measurements").

The steps of the '120 patent claims are all "essentially mental processes within the abstract-idea category."  *Elec. Power*, 830 F.3d at 1354.  For example, a Nielsen employee could observe what someone watches on television, check the TV watcher's internet history, and look to see if any of the recently visited websites are related to (that is, whether there is "an association" with) the ads that came on the TV.  Even before computers, the steps described by

---

[2] *Elec. Power*, 830 F.3d at 1351 (challenged "patents describe . . . collecting data from multiple data sources"); *see also Interval Licensing LLC v. AOL, Inc.*, 896 F.3d 1335, 1345 (Fed. Cir. 2018) ("[W]e have held that claims directed to a single display of information collected from various sources are abstract.").

[3] *Elec. Power*, 830 F.3d at 1353–54 (collecting cases); *see also F45 Training Pty Ltd. v. Body Fit Training USA Inc.*, C.A. No. 20-1194-LPS, 2021 WL 2779130, at *9 (D. Del. July 2, 2021) (ruling that "collecting and analyzing information, displaying results, and storing data are all abstract ideas, individually and in combination").

[4] *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350–51 (Fed. Cir. 2014); *see also Brightedge Techs., Inc. v. Searchmetrics, GmbH*, 304 F. Supp. 3d 859, 877 (N.D. Cal. 2018) (correlating).

[5] *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

the '120 patent could have been performed by monitoring the commercials viewed by a particular consumer and then reviewing the consumer's checkbook for purchases made from, or their phone records for calls made to, one of the recent advertisers.  For that matter, the same steps could have been undertaken even before TVs became ubiquitous by observing the print advertisements that entered a home via the newspaper and crosschecking the list of advertisers against a list of the stores the consumer visited to derive an association.  Nor is the abstract idea of collecting data sets from two different sources and looking for an association between them limited to the field of assessing the efficacy of advertisements.  A university could make a list of classes attended, collect data on library books checked out, and analyze whether there was a relationship between the two.  Or a professional sports team might gather data on games attended and, separately, merchandise sold to see if attendance boosts jersey or hat sales.  The list goes on.

The asserted claims thus reside in the "familiar class of claims" for collecting and analyzing information that routinely fails *Alice* step one.  *Elec. Power*, 830 F.3d at 1353.  The claims here are ineligible just like claims directed to similar information-analyzing ideas such as (1) "selecting certain information, analyzing it using mathematical techniques, and reporting or displaying the results of the analysis," *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018), (2) "gathering and analyzing information of a specified content, then displaying the results," *Elec. Power*, 830 F.3d at 1354, (3) "organizing and accessing records through the creation of an index-searchable database," *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325-1327 (Fed. Cir. 2017), (4) "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory," *Content Extraction*, 776 at 1347, (5) "collecting and analyzing information to detect misuse," *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1095 (Fed. Cir. 2016), and (6) "customizing information and

presenting it to users based on particular characteristics," *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).  And courts have repeatedly held abstract patents that "reduce[] to considering a web user's past online activity and subsequent purchasing decisions."[6]

None of the arguments occasionally accepted to render otherwise-abstract claims compliant under *Alice*'s first step apply here.  The claims' focus on media content segments and media content presentation devices does not save them from abstraction.  "As many cases make clear, even if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract." *SAP*, 898 F.3d at 1168 (quoting *Elec. Power*, 830 F.3d at 1353).  Nor do the asserted claims "improve the functioning of the computer, make it operate more efficiently, or solve any technological problem." *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019).  The claimed method steps are devoid of details on "*how* to engineer or program" any underlying system and recite only "result-based" functional aspirations. *Interval Licensing*, 896 F.3d at 1345; *Affinity Labs of Tex., LLC v. Amazon.com, Inc.*, 838 F.3d 1266, 1269-70 (Fed. Cir. 2016) ("The purely functional nature of the claim confirms that it is directed to an abstract idea . . .").  Where, as here, the patent claims "identify no specific technological improvement," Plaintiff cannot escape the conclusion that its patent is directed to an abstract idea. *WiTricity Corp. v. Momentum Dynamics Corp.*, No. C.A. 20-1671-MSG, 2021 WL 4426959, at *10 (D. Del. Sept. 27, 2021); *see also Kaavo Inc. v. Amazon.com Inc.*, 323 F. Supp. 3d 630, 643 (D. Del.

---

[6] *Brightedge*, 304 F. Supp. 3d at 877 (citing *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093-94 (Fed. Cir. 2016); *Collarity, Inc. v. Google Inc.*, C.A. No. 11-1103-MPT, 2015 WL 7597413, at *8 (D. Del. Nov. 25, 2015); *PUREPREDICTIVE, Inc. v. H2O.AI, Inc.*, No. 17-CV-03049-WHO, 2017 WL 3721480, at *5 (N.D. Cal. Aug. 29, 2017), *aff'd sub nom. Purepredictive, Inc. v. H2O.ai, Inc.*, 741 F. App'x 802 (Fed. Cir. 2018)).

2018).  The asserted dependent claims (2, 9, 15) only further specify the type of information that is collected.  As *Electric Power Group* makes clear, specifying the type of information does not change the analysis.  830 F.3d at 1353–54.

In sum, the '120 patent's claims are abstract because they are directed to "improvements to [Nielsen's] *business performance*," not "tangible improvement[s] to technology."  *Brightedge*, 304 F. Supp. 3d at 867.  The only remaining question is whether the claims recite an inventive concept that is "significantly more" than the abstract idea itself.  They do not.

### 2.    The '120 patent claims fail *Alice* Step 2.

The asserted claims of the '120 patent do not recite any inventive concept that could confer patent-eligibility on the abstract idea.  "To save a patent at step two, an inventive concept must be evident in the claims."  *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).  The inventive concept must provide "significantly more" than the abstract idea itself.  *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1289-90 (Fed. Cir. 2018).  Elements that are "well-understood, routine, conventional," or "purely functional" cannot confer patent-eligibility.  *Alice*, 573 U.S. 208, 225–26 (citation omitted); *In re TLI Commc'ns LLC Pat. Litig.*, 823 F.3d 607, 611-12 (Fed. Cir. 2016).

The asserted claims of the '120 patent recite nothing more than a "[w]holly generic computer implementation" with "purely functional" elements.  *Alice*, 573 U.S. at 223-26; *In re TLI*, 823 F.3d at 612.  The claims include only generic items such as a "content presentation device," a "meter," and an "activity monitor," and a generic functional result of "determining an association" between two sets of data, which cannot confer patent-eligibility.  *Alice*, 573 U.S. at 226 (holding that claim elements such as "data processing system," "communications controller," and "data storage unit" were "purely functional and generic" and failed to provide an

inventive concept); *Elec. Power*, 830 F.3d at 1355 (noting that claim requirement of "'displaying concurrent visualization' of two or more types of information" was insufficient to confer patent eligibility); *Mortgage Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324-25 (Fed. Cir. 2016) (invalidating claims reciting only "generic computer components such as an 'interface,' 'network,' and 'database'").

The asserted claims also fail to specify ***how*** the claimed methods achieve the desired results of collecting data and drawing an association. Instead, they use only "generic functional language to achieve the[] purported solutions." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017); *Interval Licensing*, 896 F.3d at 1345 (finding claims ineligible because they "simply demand[ed] the production of a desired result . . . without any limitation on how to produce that result"); *In re Greenstein*, 778 F. App'x 935, 938 (Fed. Cir. 2019) (finding claims containing "functional, results-oriented limitations" ineligible because they "d[id] not provide any concrete solution"). The claims state only open-ended, aspirational functional goals that, somehow, through unspecified underlying hardware and software, information is "determine[ed]" and "logg[ed]" and then an association is "determine[ed]." '120 Patent, claim 1. The claims offer no insight into ***how*** to determine that a media content segment was played, how to log activity on a computing device, or how to determine an association between what happens on the media content presentation device and the computing device. *See id.* "At that level of generality, the claims do no more than describe a desired function or outcome, without providing any limiting detail that confines the claim to a particular solution to an identified problem." *Affinity*, 838 F.3d at 1269.

Nor do the claims in the '120 patent improve the conventional technology they incorporate. In fact, the asserted claims do not even purport to use a computer to perform the

critical step of "determining an association" between the activity monitor and the second meter. Independent claim 1 is a method claim that permits the "determining" step to be performed by a human mind; independent claim 14 requires the that the determining step be performed by a "central facility," which, again, could be anything, including a human mind.  But because the determining step is itself so generic and abstract—*i.e.*, "determining an association"—there is no concrete argument that the patent claim improves upon any existing computer functionality or other technology.

Nielsen attaches to its complaint a declaration from a purported expert, Virginia Lee (Compl., Ex. B ("Lee Decl.")), perhaps in an effort to manufacture a factual dispute regarding the inventiveness of its idea.  For at least three reasons, that gambit fails.  ***First***, and most fundamentally, Nielsen's complaint and declaration make plain that the supposed inventive concept is merely a new application of a familiar abstract idea.  *ZapFraud, Inc. v. FireEye, Inc.*, C.A. No. 19-1688-CFC, 2021 WL 1138021, at *1 (D. Del. Mar. 25, 2021) (dismissal proper where inventive concepts supposedly subject to a factual dispute were "nothing more [than] applications of the claimed abstract idea").  Both the complaint and declaration focus on how companies like Nielsen previously had to "draw[] inferences based on the timing of sales volumes in relationship to the timing of advertising," but that "focusing on individuals' computer activity . . . allows an interested party to gauge the effectiveness of an advertisement in terms of consumer activity."  Lee Decl. ¶ 13; *see also* Compl. ¶¶ 35-36.  In other words, the supposed inventive concept is just changing the data sets being collected and analyzed.  Collecting and comparing data, even novel data Nielsen may not have formerly had access to, is not a sufficient inventive concept.  *See, e.g.*, *Priceplay.com, Inc. v. AOL Advert., Inc.*, 83 F. Supp. 3d 577, 582 (D. Del. 2015) ("Novelty . . . is not the issue when determining whether a claimed invention is

directed to patentable subject matter."), *aff'd,* 627 F. App'x 925 (Fed. Cir. 2016); *see also BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) (concluding "a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept").  As such, even if Nielsen's allegations and declaration are credited, they do not create a factual dispute about the inventiveness of the patent claims.

  ***Second***, no inventive concept is captured in the ***claims*** of the patent; it is insufficient to point to the specification or matters outside the patent altogether to find the inventive concept. *Baggage Airline Guest Svcs., Inc. v. Roadie, Inc.*, 351 F. Supp. 3d 753, 761 (D. Del. Jan. 7, 2019).  ***Finally***, to the extent Nielsen intends to claim any ***other*** inventive concept, the allegations in Nielsen's complaint and attached declaration are too conclusory to be credited. *See Zyrcuits IP LLC v. Acuity Brands, Inc.*, C.A. No. 20-1306-CFC, 2021 WL 3287801, at *5 (D. Del. Aug. 2, 2021) ("But Zyrcuits cannot artificially create a dispute of fact by making the conclusory allegation that 'claim 4 embodies an inventive concept' . . . .").

  The asserted claims thus fail *Alice* step two and are patent ineligible under § 101.

   **3. The Court need not separately analyze the patent's other claims.**

  "The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a representative claim and 'all the claims are substantially similar and linked to the same abstract idea.'" *Idexx Lab'ys, Inc. v. Charles River Lab'ys, Inc.*, C.A. No. 15-668-RGA, 2016 WL 3647971, at *2 (D. Del. July 7, 2016) (quoting *Content Extraction*, 776 F.3d at 1348).  Where, as here, all of the patent's claims "relate to the ***same*** abstract idea" and none of the other claims in the patent "add one or more inventive concepts that would result in patent eligibility," the Court

need only analyze the representative claim.  *Cronos Techs., LLC v. Expedia, Inc.*, C.A. No. 13-1538-LPS, 2015 WL 5234040, at *2 (D. Del. Sept. 8, 2015).

All claims of the '120 patent are directed to the same abstract idea.  The other independent claims (14, 19, and 22) recite a system, an apparatus, and a machine readable medium, respectively, for performing the steps set forth in the prior claims.  Claims 2, 9, 10, 15, 20 simply identify the information collected.  Claims 3, 4, 16, 21, 23 (all of which narrow the relevant timeframe), 11 (comparing metadata), 12 (comparing codes), and 13 (comparing images) merely specify the type of information to be analyzed.[7]  Claims 5 and 18 require displaying and storing the results of a comparison, which *Electric Power Group* indicates is ineligible.  830 F.3d at 1353; *see also In re TLI*, 823 F.3d at 611 (patent claims directed to "storing" data held to be abstract).  And claims 6, 7, 8, 17, and 24 just add generic computer functionality.  Suffice it to say, ***all*** the remaining claims remain focused on collecting two sets of data and finding an association between the sets.  Claim 1 can therefore be analyzed as representative.

### B.    The claims of the '189 patent fail under § 101.

The '189 patent is directed to "methods and apparatus to monitor environments."  *See* '189 Patent at 1:7-8.  Nielsen alleges infringement of claim 9, which states:

9.    An audience measurement device, comprising:

a first data analyzer to execute a first recognition analysis on three-dimension data representative of a first object within a threshold distance from a three-dimensional sensor;

---

[7] *See Elec. Power*, 830 F.3d at 1355 ("More particularly, a large portion of the lengthy claims is devoted to enumerating types of information and information sources available within the power-grid environment.  But merely selecting information, by content or source, for collection, analysis, and display does nothing significant to differentiate a process from ordinary mental processes, whose implicit exclusion from § 101 undergirds the information-based category of abstract ideas.").

a second data analyzer to execute a second recognition analysis on two-dimensional data representative of a second object outside the threshold distance from the three-dimensional sensor; and

a counter to combine a first detection of a first person provided by the first data analyzer and a second detection of a second person provided by the second data analyzer to generate a people count for an environment, wherein at least one of the first data analyzer, the second data analyzer or the counter is implemented via a logic circuit.

'189 Patent at 23:23-38. The patent's other claims are similar. They include machine-readable medium (claim 1) and method (claim 14) independent claims that are directed to identifying and tracking people. Those two claims also have dependent claims (claims 8 and 21, respectively) that include a counting limitation similar to the one in claim 9.

Like the claims of the '120 patent, the '189 patent's claims fail both steps of *Alice*.

### 1.    The '189 patent claims fail *Alice* Step 1.

Claim 9 of the '189 patent—the only claim that Nielsen specifically asserts is infringed—is likewise directed to an abstract idea. As Nielsen admits, the patent relates to "capturing images of the area in front of a television and analyzing those images to determine the number of people present." Compl. ¶ 15. Claim 9 is directed to (1) detecting an object within a threshold range using a 3-D method; (2) detecting a different object outside a threshold range with a 2-D method; and (3) counting the total number of people detected. *See also id.* ¶ 18. Notably, the asserted claim does not describe how the claimed 2-D or 3-D methods work, nor does it explain how to distinguish between an object and a person, or how the counting functionality works.

Each of the claimed steps is abstract. Monitoring and observing for example, have repeatedly been ruled abstract,[8] as has "evaluat[ing] and communicat[ing] the relative movement

---

[8] *See, e.g.*, *Control v. Digital Playground, Inc.*, No. 12-CV-6781 (RJS), 2016 WL 5793745, at *5 (S.D.N.Y. Sept. 30, 2016); *Neochloris, Inc. v. Emerson Process Mgmt. LLLP*, 140 F. Supp. 3d 763, 770 (N.D. Ill. 2015); *IPLearn–Focus, LLC v. Microsoft Corp.,* 2015 WL 4192092, at *1

of a body," *iLife Techs., Inc. v. Nintendo of Am., Inc.*, 839 F. App'x 534, 536 (Fed. Cir.), *cert. denied*, 142 S. Ct. 109 (2021).  And insofar as the claim is directed to detecting people using *cameras*, *see, e.g.*, Compl. ¶ 21, taking two pictures and doing something with them has likewise been held abstract.  *Yu v. Apple Inc.*, 1 F.4th 1040, 1044 (Fed. Cir. 2021) (finding abstract an "improved digital camera" that uses two sensors to take separate images and then uses a "digital image processor" to use one image to enhance the other); *see also Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 WL 7639820, at *11 (C.D. Cal. Oct. 28, 2014) (patent that entailed, among other steps, taking photographs and using specific identifying details to match photographs to participants was directed to an abstract idea).  The final step—counting or calculating—is a paradigmatic example of an abstract idea.[9]

Combining two abstract ideas—detecting and then counting—does not without more render them non-abstract.  *Elec. Power*, 830 F.3d at 1353–54.  Moreover, here, it is generous to suggest that the asserted claim even involves two abstract ideas, given that the cases lump "observing" and "analyzing" data or "taking" and "classifying" photographs into a single abstract idea.  *See, e.g.*, *Control*,  2016 WL 5793745, at *5 (citing *Neochloris*, 140 F. Supp. 3d at 770, and *In re TLI Commc'ns LLC*, 87 F. Supp. 3d 773, 785 (E.D. Va. 2015) *aff'd*, 823 F.3d 607 (Fed. Cir. 2016)).

Just like the claims of the '120 patent, the claims of the '189 patent can be—and long have been—practiced by human beings.  Looking into a crowd and counting people is an age-old

(N.D. Cal. July 10, 2015); *Transaction Sys., LLC v. Jack Henry & Associates, Inc.,* 76 F.Supp.3d 513, 516 (D. Del. 2014); *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, 100 F. Supp. 3d 405, 413–14 (D.N.J. 2015), *aff'd,* 636 F. App'x 1014 (Fed. Cir. 2016).

[9] *See, e.g.*, *Parker v. Flook*, 437 U.S. 584, 595 (1978) ("[I]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory." (internal citation omitted)); *In re Bd. of Trustees of Leland Stanford Junior Univ.*, 991 F.3d 1245, 1250–51 (Fed. Cir. 2021); *TPP Tech LLC v. Zebra Techs. Corp.*, 403 F. Supp. 3d 382, 388 (D. Del. 2019).

practice.  Humans regularly locate people, objects, or animals by two different methods—such as looking right and then looking left—and then count what has been observed.  Or take, as another example, a birdwatcher wishing to count birds.  The birdwatcher could first detect birds visible with bare sight; then use binoculars to detect birds "outside the threshold distance" afforded by bare sight; and then "combine" the two inputs to "generate a [bird] count."  '189 Patent, Claim 9.

Notably, the claimed apparatus does ***not*** "more accurately and more efficiently recognize objects in an environment than previous recognition systems," as the patent boasts (*see* '189 Patent 4:26-30), because ***the claims*** do not require any such improved methodology.  *See Yu*, 1 F.4th at 1044 ("[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims") (quoting *ChargePoint, Inc. v. Sema-Connect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019)).  Instead, the claims merely require using one data analyzer in one area ("within a threshold distance") and a different data analyzer in a different area ("outside a threshold distance").  Thus, the '189 patent "seeks to automate 'pen and paper methodologies'" and is a "quintessential 'do it on a computer' patent" that the Federal Circuit has routinely held to be "directed to abstract ideas."  *Univ. of Fla. Rsch. Found., Inc. v. Gen. Elec. Co.*, 916 F.3d 1363, 1367 (Fed. Cir. 2019).

The claims of the '189 patent are thus directed to an abstract idea and fail at step one of the *Alice* inquiry.

### 2.     The '189 patent claims fail *Alice* Step 2.

There is no inventive concept evident in the claims of the '189 patent.  As set forth above, the claims include only generic, functionally described technological implementation. *Alice*, 134 S. Ct. at 2360.  They do not set forth ***how*** objects or persons are to be detected by two-

or three-dimensional sensors, nor do they improve the conventional technology they incorporate. *Affinity*, 838 F.3d at 1269; *Simio*, 983 F.3d at 1361.  Indeed, the patent specification makes plain that the patent claims seek to take advantage of "[r]ecent developments in the capture and processing of three-dimensional data."  '189 Patent 3:10-12.  But the claims do not require such improvements.  And considering each claim as an "ordered combination" of elements also does not help Nielsen here, either.  *Alice*, 573 U.S. at 225.  There is nothing inventive about the idea of first detecting people and then counting them in that order.

> Nielsen's complaint and the attached Lee Declaration assert that the patent claims:
>
> provide an improvement over the prior art by using three dimensional analysis in a distance range that is best suited to three dimensional analysis[ and] using two-dimensional analysis in a distance range that is most suited to two-dimensional analysis, and combining the results of the analysis into a people count."

Compl. ¶ 26; Lee Decl. ¶ 22.  This, however, puts a significant gloss on what the patent claims actually say, which is just to use the three-dimensional sensor when objects are within a threshold distance and a two-dimensional sensor when objects are outside the threshold.  That may or may not be using the two-dimensional sensor in the area "most suited" for two-dimensional analysis and the same for the three-dimensional sensor.  Moreover, the claims don't specify what the "threshold distance" is or describe how to compute it.  Indeed, the patent specification says that the threshold distance "may vary depending on a particular sensor . . . or a particular processing technique."  '189 Patent 3:39-45.  Whatever the threshold distance is, the patent simply requires using one camera on in one area and the other camera in another area—as the Lee Declaration essentially admits. *See* Lee Decl. ¶ 18.  There is no evidence—in the Lee Declaration or elsewhere—that such a completely obvious set-up adds anything of significance.

The '189 patent thus fails at *Alice* step two as well.

### 3.     The Court need not separately analyze the patent's other claims.

Just as with the '120 patent, the Court need not undertake a full analysis of each claim of the '189 patent, as claim 9 is representative.  Claims 1-8 recite machine readable storage mediums directed to detecting, tracking, and counting objects.  Claim 9's dependent claims (10-13) specify additional steps for tracking persons who move across the monitored area; they are still directed to detecting people.  Claim 14 is an independent method claim that recites steps for detecting and tracking a person as she moves.  And dependent claims 15-21 merely specify the way that tracking is to be done; claim 21, in particular, echoes claim 9, as it recites a method to count the people being tracked.  If claim 9 is directed to an abstract idea, so too are the other claims.

### C.     Nielsen's willfulness allegations should be dismissed.[10]

A plaintiff seeking to enhance its damages based on willful infringement "must plausibly allege that the accused infringer deliberately or intentionally infringed a patent-in-suit after obtaining knowledge of that patent and its infringement."  *APS Tech., Inc. v. Vertex Downhole, Inc.*, C.A. No. 19-1166 (MN), 2020 WL 4346700, at *4 (D. Del. July 29, 2020).  Plaintiff must therefore "adequately allege factual circumstances in which the patents-in-suit [are] called to the attention of the defendant[]." *Spherix Inc. v. Cisco Systems, Inc.*, C.A. No. 14-393-SLR, 2015 WL 1517435, at *2 (D. Del. Mar. 31, 2015) (cleaned up).  Here, Nielsen has pleaded ***no facts*** from which the Court could infer TVision's pre-suit knowledge on Nielsen's patents.  Rather, Nielsen alleges only that "[o]n information and belief, Defendant . . . had knowledge of the [patents-in-suit] before the service date of the Complaint."  Compl. ¶¶ 66, 85.  Alleging pre-suit

---

[10] Should the Court agree with TVision on § 101, it need not reach this argument.

knowledge on information and belief is not sufficient to overcome a motion to dismiss.[11]  The only fact Nielsen does allege is that the Nielsen and TVision websites use similar stock photographs to show what it looks like when a family watches TV.  Compl. ¶ 41.  But all four photos that Nielsen says "are the same in concept and design as (or even exact copies of) photographs contained in Nielsen's standard sales slide decks" (Compl. ¶ 41)— which simply show what it looks like to watch TV—are stock photos readily accessible and purchasable on the internet.[12] And using similar stock photos does not show knowledge of the Nielsen's patents or anything else relevant to willful infringement. *Cf. Bos. Sci. Corp. v. Nevro Corp.*, C.A. No. 16-1163-CFC, 2021 WL 4262668, at *1 (D. Del. Sept. 20, 2021) ("[E]nhanced damages awards under § 284 are available only in 'egregious cases' of misconduct that involve more than typical infringement.").

Nielsen's claim for willfulness infringement should thus be dismissed with prejudice.

---

[11] *Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*, C.A. No. 15-438-LPS-CJB, 2015 WL 7833206, at *5 (D. Del. Dec. 3, 2015), *report and recommendation adopted*, 2016 WL 9344010 (D. Del. Jan. 21, 2016); *Courtesy Prod., L.L.C. v. Hamilton Beach Brands, Inc.*, 73 F. Supp. 3d 435, 442 (D. Del. 2014) ("Courtesy has offered no factual information to establish 'awareness' or 'full knowledge' of the patents-in-suit, sufficient to evidence pre-suit knowledge of the patents-in-suit."); *HSM Portfolio LLC v. Fujitsu Ltd.*, C.A. No. 11-770-RGA, 2012 WL 2580547, at *2 (D. Del. July 3, 2012) ("The factual support for the allegations of willfulness made in connection with the patents-in-suit are insufficient.  There are none."); *Telebrands Corp. v. GMC Ware, Inc.*, No. CV 15-03121-SJO(JCx), 2016 WL 6237914, at *8 (C.D. Cal. Apr. 5, 2016) (pleading willfulness on information and belief is insufficient); *Bell Helicopter Textron Inc. v. Am. Eurocopter, LLC*, 729 F. Supp. 2d 789, 800 (N.D. Tex. 2010) (same).  *See also NNCrystal US Corp. v. Nanosys, Inc.*, C.A. No. 19-1307-RGA, 2020 WL 616307, at *4 (D. Del. Feb. 10, 2020) ("Plaintiffs' argument in support of the allegation of willfulness essentially is an argument that all Plaintiffs have to do is allege willfulness and that is sufficient to state a claim. I do not agree."); *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, C.A. No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018) ("Mere formulaic pleading of willful infringement will not survive a Rule 12(b)(6) motion.").

[12] *See* https://www.istockphoto.com/photo/rear-view-of-a-couple-relaxing-on-sofa-in-the-living-room-and-watching-a-movie-on-tv-gm953425192-260257938 (photo of two people watching TV used by both parties); https://www.stocksy.com/1266605/friends-laughing-together (three people watching tv); https://stock.adobe.com/images/couple-sitting-on-sofa-watching-television-together/170712688 (two people watching TV); https://www.istockphoto.com/photo/woman-watching-tv-at-home-gm925104536-253872505 (one person watching TV).

## VI.    CONCLUSION

For the foregoing reasons, all claims in the patents-in-suit should be found unpatentable under § 101, and this action should be dismissed without leave to amend.  Alternately, as to any patent not held to be unpatentable under § 101, the Court should dismiss Nielsen's willfulness allegations for failure to state a claim.

Respectfully submitted,

/s/ Nathan R. Hoeschen
John W. Shaw (No. 3362)
Nathan R. Hoeschen (No. 6232)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
nhoeschen@shawkeller.com
*Attorneys for Defendant*

OF COUNSEL:
Ajay S. Krishnan
Julia L. Allen
Bailey W. Heaps
Reaghan E. Braun
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
(415) 391-5400

Dated: January 7, 2022

19