# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE NIELSEN COMPANY (US), LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 21-1592-CJB |
| v. | ) |
| | ) **JURY TRIAL DEMANDED** |
| TVISION INSIGHTS, INC., | ) |
| | ) **PUBLIC VERSION** |
| Defendant. | ) |
| | ) |
| | ) |

## LETTER TO THE HONORABLE CHRISTOPHER J. BURKE
## FROM BINDU A. PALAPURA

OF COUNSEL:

Steven Yovits
Constantine Koutsoubas
Michael J. Weil
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Chicago, IL 60606
Tel: (312) 857-7070

Clifford Katz
Malavika Rao
KELLEY DRYE & WARREN LLP
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Tel: (212) 808-7800

David E. Moore (#3983)
Bindu A. Palapura (#5370)
Brandon R. Harper (#6418)
Carson R. Bartlett (#6750)
POTTER ANDERSON & CORROON LLP
Hercules Plaza, 6th Floor
1313 N. Market Street
Wilmington, DE 19801
Tel: (302) 984-6000
dmoore@potteranderson.com
bpalapura@potteranderson.com
bharper@potteranderson.com
cbartlett@potteranderson.com

*Attorneys for Plaintiff The Nielsen Company (US), LLC*

Dated: August 17, 2022
PUBLIC VERSION - Dated: August 24, 2022
10301938 / 14944.00004

Dear Judge Burke:

The Nielsen Company (US), LLC ("Nielsen") respectfully asks the Court to compel TVision Insights, Inc. ("TVision") to produce core technical documents relating to the accused TVision ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ pursuant to Paragraph 4(b) of the Delaware Default Standard for Discovery (the "Default Standard").

1. **The procedure set forth in the Default Standard requires TVision to produce core technical documents relating to** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

The Default Standard requires that after the plaintiff "specifically identifies the accused products," the defendant must produce core technical documents relating to each of those "accused products." Default Standard, ¶ 4(a), (b). On July 8, 2022, Nielsen served its disclosures pursuant to Paragraph 4(a), stating that it "specifically accuses ... ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓" Ex. A, Nielsen's Disclosures Pursuant to Paragraph 4(a) of the Default Standard at p. 2. But instead of satisfying its corresponding Default Standard obligation, TVision refused to produce core technical documents relating to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ According to TVision, it does not have to produce documents because, under its proposed claim construction, ▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓ does not infringe the asserted '189 patent.[2] See D.I. 32, Joint Scheduling Order, p. 20 n. 2.

TVision cannot ignore the procedure set forth in the Default Standard because it believes the accused ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ does not infringe the asserted patent. See *Greatbatch Ltd. v. AVX Corp.*, 179 F. Supp. 3d 370, 374 (D. Del. 2016) (recounting prior hearing in which the Court had ordered the defendant to produce core technical documents, despite the defendant's insistence that the product at issue "unarguably [did] not infringe" the asserted patent).

2. **TVision cannot unilaterally impose its own claim construction as a relevancy test or as justification to withhold discovery.**

According to Fed. R. Civ. P. 26(b)(1), Nielsen "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." TVision cannot credibly argue that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ core technical documents are irrelevant to Nielsen's allegations that the system infringes the asserted patent; nor has TVision asserted that production would be unduly burdensome. Instead, TVision's only basis for withholding production of core technical documents is its belief that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ do not infringe the asserted patent under TVision's proposed claim construction.

---

[1] To date, TVision has not produced any documents that describe how ▓▓▓▓▓▓▓▓▓▓ works or how the data it produces is used. The only ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ related documents TVision has produced are (1) a declaration identifying ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ used in TVision's systems; and (2) a single document with a general discussion of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[2] Specifically, as discussed in detail below, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ cannot be part of an infringing system. See D.I. 32, Joint Scheduling Order at p. 20 n. 2.

The Honorable Christopher J. Burke
August 17, 2022   PUBLIC VERSION August 24, 2022
Page 2

### a) Core technical documents for ▮▮▮▮▮ are relevant to Nielsen's infringement case.

Nielsen had a good faith basis to accuse ▮▮▮▮▮ of infringement in its Paragraph 4(a) disclosures, based on both TVision's identification of ▮▮▮▮▮ it uses and publicly available information. But to draft infringement contentions, Nielsen will need the type of information contained in core technical documents (and later in source code production).

### b) The claim construction upon which TVision relies is wrong.

Under the Scheduling Order, an initial exchange of proposed constructions is not set to occur until January 2023. Thus, TVision's claim construction-based arguments are premature, and the Court should not consider them as part of its analysis. However, for the sake of completeness, Nielsen will address the merits of TVision's incorrect claim construction position.

TVision's argument that the asserted claim of the '189 Patent (Claim 9) requires two physically separate sensors is wrong. *See* D.I. 32, Joint Scheduling Order at p. 20 n. 2. In particular, the claim recites an audience-measurement device that counts the number of people watching a television using two data analyzers: one that executes a "first recognition analysis on three-dimensional data representative of a first object within a threshold distance from a three-dimensional sensor," and another that "executes a second recognition analysis on two-dimensional data representative of a second object outside the threshold distance." D.I. 1, Compl., Ex. A, '189 Patent, Claim 9. As this quoted language shows, the claim recites a three-dimensional sensor, but it does not explicitly recite a two-dimensional sensor. However, the claim requires two-dimensional *data,* which in turn requires a sensor that produces two-dimensional data. Such a sensor is by definition a two-dimensional sensor, and, in that sense, the claim requires both a three-dimensional sensor and a two-dimensional sensor. But the claim does not require two different pieces of hardware to serve as two-dimensional and three-dimensional sensors. ▮▮▮▮▮

---

[3] As the specification of the '189 Patent explains, it is advantageous to use three-dimensional data when counting objects within a threshold distance and to use two-dimensional data when counting objects outside that threshold distance. *See, e.g.,* D.I. 1, Compl., Ex. A., '189 Patent, 3:10-37, 4:1-10. In other words, the invention of the '189 Patent takes advantage of the strengths of a three-dimensional sensor (which can be a particular sensor operating in three-dimensional mode) in close range and the strengths of a two-dimensional sensor (which can be the same sensor operating in two-dimensional mode) at longer range.

The Honorable Christopher J. Burke
August 17, 2022     PUBLIC VERSION August 24 2022
Page 3

      **c) Under the correct claim construction, ▇▇▇▇▇▇ likely infringes Claim 9**

Under the correct claim construction, discovery may very well reveal that ▇▇▇ infringes Claim 9 of the '189 Patent.[4] More specifically, the evidence shows that



     *      *      *

For the reasons set forth above, Nielsen respectfully requests that the Court compel TVision to produce core technical documents relating to ▇▇▇▇▇▇.

Respectfully,

/s/ Bindu A. Palapura

Bindu A. Palapura

cc:    Counsel of Record (*via email*)

---

[4] ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See Intell. Ventures I, LLC v. Motorola Mobility, LLC*, 13 F. Supp. 3d 369, 382 (D. Del. 2014).